IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

JOEY STEELE,

        Plaintiff,

V.                                                      CIVIL ACTION NO. 3:06-0474

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

**MEMORANDUM ORDER**

      In this action, filed under the provisions of 42 U.S.C. § 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security discontinuing benefits for supplemental security income that he received as a child when he attained the age of eighteen and denying his claim for benefits upon redetermination as a disabled adult. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

      Plaintiff filed his application for child's supplemental security income on April 6, 1999, alleging disability as a consequence of low back pain, stomach problems, ADHD, a heart murmur and low I.Q. Following an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff disabled as of the date the application was filed. When plaintiff reached age 18, his status was reevaluated to determine if his disability continued, and on July 22, 2003, he was notified that his disability had ceased on July 1, 2003. This determination was based on the definition of disability for adults. On appeal from an initial and reconsidered denial of this

determination, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review.  Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was twenty-one  years of  age and had obtained a ninth grade education.  He has no past relevant employment experience.  In his decision, the administrative law judge determined that plaintiff suffers from "borderline intellectual functioning and a past history of attention deficit hyperactive [sic] disorder,"  impairments he considered severe.  Concluding that plaintiff retained the residual functional capacity for a limited range of work at all levels of exertion, and relying on Rule 204.00 of the medical-vocational guidelines[1] and the testimony of a vocational expert, the administrative law judge found him not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. Plaintiff alleged at the hearing that he experiences back pain two to three times per week with a duration of about one day. He estimated he could walk one-half mile, stand twenty-five to thirty minutes, lift a gallon of milk and was not generally limited in ability to sit. He spends his day sitting, watching television, playing video games and visiting with friends. His hobby is playing guitar. He does very little to help his mother around the house.

---

[1] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 4.

Under the Regulations, an impairment is established by "medical evidence consisting of signs,[2] symptoms,[3] and laboratory findings,[4] not only by [a claimant's] statements of symptoms." 20 C.F.R. § 416.908. Here, there are only complaints from plaintiff relative to back pain, without signs or laboratory findings to support those complaints. Examinations have consistently revealed full range of motion in the back, an absence of tenderness, negative straight leg raising tests, a normal gait, and ability to perform a full squat and to arise without difficulty. Lumbar spine x-rays from June 2003 were interpreted as showing "minimal" lumbar levoscoliosis and thoracic dextroscoliosis. X-rays from May 25, 2004 were interpreted as negative for any abnormalities. Dr. Smolyar, who performed a consultative examination of plaintiff on June 18, 2003, expressed the opinion that plaintiff had no significant restriction of physical activity due to his lower back. Plaintiff's treating physician at Riverview Family Practice, though listing a diagnosis of "lumbar spine syndrome," did not document abnormal findings in his reports. He expressed the belief that plaintiff was "trainable" in a March 7, 2005 note. Finally, Paul Connor, PA-C, who also treated plaintiff for back pain, though not reporting abnormal findings, stated in a March 16, 2005 note that he would not write a statement for plaintiff regarding his back because he "is physically capable of performing work despite the back discomfort."

---

[2]Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from a claimant's statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. 20 C.F.R. § 416.928(b).

[3]Symptoms are a claimant's own description of physical or mental impairments. Such statements alone are not enough to establish that there is a physical or mental impairment. 20 C.F.R. § 416.928(a).

[4]Laboratory findings are "anatomical, physiological, or psychological phenomena which can be shown by the use of a [sic] medically acceptable laboratory diagnostic techniques." 20 C.F.R. § 416.928(c).

The administrative law judge found, consistent with these reports, and with assessments from the state agency medical advisors, that plaintiff's back pain was not a "severe" impairment and that he had no exertional limitations. This finding is supported by substantial evidence.

With regard to mental impairments, the administrative law judge, though finding plaintiff's borderline intellectual functioning a "severe" impairment, determined that the record did not contain the necessary findings to meet any of the sections under listing 12.05.[5] He further found that plaintiff's history of ADHD and borderline intellectual functioning resulted in mild restriction of activities of daily living[6] and social functioning[7] and moderate restriction of concentration, persistence and pace.[8] Specifically, he found plaintiff had a moderate limitation of ability to understand, remember and carry out detailed instructions and to maintain attention and concentration for extended periods. He could, however, perform routine, repetitive work activity.

Plaintiff now argues that he is disabled under § 12.05 because I.Q. testing produced a performance score of sixty nine and a full scale score of sixty eight. He asserts the administrative law judge did not explain why he disregarded these scores in favor of others and that he should have obtained an expert opinion to resolve this issue.

---

[5] 20 C.F.R. Part 404, Subpart P, Appendix 1.

[6] The administrative law judge noted plaintiff is able to play video games, watch t.v., and play guitar, among other activities.

[7] The administrative law judge noted that plaintiff generally gets along with his family and visits and receives visits from friends. Mental health examiners did not report any difficulty with plaintiff's social interaction.

[8] The administrative law judge indicated this finding was due primarily to plaintiff's borderline intellectual functioning.

The Commissioner responds that plaintiff does not meet the "diagnostic description" contained in the introductory paragraph to § 12.05 which requires "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."[9] The Commissioner asserts that the record does not demonstrate that plaintiff had any deficits in adaptive functioning or that his I.Q. scores were seventy or below.

As the administrative law judge noted in his decision, since 1994, plaintiff has undergone a number of psychological evaluations, many of which have involved I.Q. testing. On December 20, 1994, when he was almost ten years old, plaintiff's I.Q. scores, tested through the Wayne County Special Education Department, were verbal I.Q. of 84, performance score of 79 and full scale score of 80, ranging from "well below average" to "low average." On July 9, 1999, when plaintiff was fourteen and one-half years old, he was administered the WISC-3 intelligence test during a consultative examination and obtained a verbal score of 73, performance score of 69 and full scale score of 68. On September 13, 2001, at age sixteen, testing in the school setting produced scores of verbal 83, performance 91 and full scale 86. Finally, during a consultative evaluation on May 12, 2002, plaintiff, then age seventeen, obtained a verbal score of 76, performance score of 73 and full scale score of 72.

While plaintiff did obtain I.Q. scores of 68 and 69, as noted, he was age fourteen and one-half when the scores were recorded. As the Commissioner points out, the mental impairment listings applicable to children specify that I.Q. test scores must be "sufficiently current" for accurate

---

[9] 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.00, 12.05.

assessment under the listing.[10] I.Q. scores obtained between the ages of seven and sixteen are considered current for only two years if they are higher than 40. Results obtained at age sixteen or older should be considered a valid indication of a child's status if they are compatible with current behavior.[11] It is the Commissioner's position that the administrative law judge correctly followed the Regulations and used the "most sufficiently current" scores for his consideration, which were those obtained most recently in May 2002 at age seventeen.

The administrative law judge, though listing all the I.Q. scores contained in the record as well as the dates of testing, adopted a diagnosis of borderline intellectual functioning rather than mild mental retardation which would have been indicated by the scores obtained when plaintiff was age fourteen. Considering the above sections of the Regulations, the Court concludes that it was entirely reasonable and proper for the administrative law judge to rely on plaintiff's most recent I.Q. scores in evaluating his mental impairment. Unfortunately, he does not set forth his reasoning for utilizing the more recent scores in evaluating the degree of impairment in intellectual functioning.[12]

While the administrative law judge's failure to "consider all relevant evidence," to indicate "explicitly that such evidence has been weighed . . . its weight" and to articulate "the reasons underlying his actions . . ."[13] would normally require remand for a reevaluation of this issue, the

---

[10] 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112D10.

[11] Id.

[12] See, Arnold v. Secretary of Health, Education and Welfare, 567 F.2d 258, 259 (4th Cir. 1977); Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987).

[13] Murphy v. Bowen, supra. at 437.

Court finds this would add nothing to the case and would be an inefficient use of judicial time and resources since the result on remand would clearly by the same.[14]

Based on the preceding, the Court concludes that the administrative law judge did not err in failing to find that plaintiff met listing 12.05C, that his finding of no severe physical impairment is supported by substantial evidence and that his findings as to plaintiff's residual functional capacity are also supported by the substantial evidence in the record.

On the basis of the foregoing, it is **ORDERED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted, and the decision of the Commissioner affirmed. All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

The Clerk is directed to transmit a copy of this Memorandum Order to all counsel of record.

ENTER: May 8, 2009

*signature*
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE

---

[14] See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (affirming decision despite error "because there is no question but that [the administrative law judge] would have reached the same result notwithstanding his initial error[]"); see also, Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) (". . . a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case[]").